## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| AMANDA H.,[1] | : | Case No. 1:23-cv-101 |
| | : | |
| Plaintiff, | : | Magistrate Judge Peter B. Silvain, Jr. |
| | : | (by full consent of the parties) |
| vs. | : | |
| | : | |
| COMMISSIONER OF THE SOCIAL | : | |
| SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## DECISION AND ENTRY

Plaintiff Amanda H. brings this case before the Court challenging the Social Security Administration's denial of her application for Supplemental Security Income.  She asserts that the Administrative Law Judge (ALJ) erred in considering the previous ALJ's decision, evaluating her mental residual functional capacity, weighing the medical opinions, analyzing her subjective complaints, and posing a hypothetical to the vocational expert during the hearing.  (Doc. #8).

In the alternative, Plaintiff seeks a remand under Sentence Six of 42 U.S.C. § 405(g) for further proceedings on the ground that the administrative record contains new and material evidence.  (Doc. #9).

This case is before the Court upon Plaintiff's Statement of Errors (Doc. #8), Plaintiff's "Motion in Alternative to Remand Case under Sentence [Six] of 42 U.S.C. Section 405(g)"

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs only by their first names and last initials. *See also* S.D. Ohio General Rule 22-01.

("Motion to Remand"), the Commissioner's Memorandum in Opposition (Doc. #14), Plaintiff's Reply (Doc. #15), and the administrative record (Doc. #7).

## I.    Background

The Social Security Administration provides Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 1382(a). The term "disability" encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing "substantial gainful activity." 42 U.S.C. § 1382c(a)(3)(A); *see Bowen,* 476 U.S. at 469-70.

In the present case, Plaintiff protectively applied for benefits on January 26, 2021[2], alleging disability due to several impairments, including obsessive compulsive disorder, post-traumatic stress disorder, severe treatment resistant depression, morbid obesity, generalized anxiety disorder, sleep apnea, social anxiety disorder, and hypothyroidism. (Doc. #7-6, *PageID* #539). After Plaintiff's application was denied initially and upon reconsideration, she requested and received a telephonic hearing before ALJ Anne Shaughnessy. Thereafter, the ALJ issued a written decision, addressing each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 416.920. She reached the following main conclusions:

Step 1:    Plaintiff has not engaged in substantial gainful employment since January 26, 2021, the application date.

Step 2:    She has the following severe impairments: obesity, obstructive sleep apnea, major depressive disorder, and generalized anxiety disorder.

---

[2] Plaintiff previously filed for benefits on April 21, 2015. That application was denied by administrative decision on February 16, 2018. (Doc. #7-3, *PageID* #s 379-404). It does not appear that Plaintiff appealed that decision.

Step 3:          She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4:          Her residual functional capacity, or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "light work … except she should avoid exposure to extreme heat, humidity, and wetness. She would need to avoid concentrated exposure to fumes, odors, dusts[,] and gases. She can have occasional interaction with coworkers and supervisors but no interaction with the public. She can adapt to routine changes in the work setting."

                 She is unable to perform her past relevant work.

Step 5:          Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that she can perform.

(Doc. #7-2, *PageID* #s 41-49).  Based on these findings, the ALJ concluded that Plaintiff was not under a benefits-qualifying disability since January 26, 2021, the date the application was filed. *Id.* at 49.

The evidence of record is adequately summarized in the ALJ's decision (Doc. #7-2, *PageID* #s 39-49), Plaintiff's Statement of Errors (Doc. #8), the Commissioner's Memorandum in Opposition (Doc. #14), and Plaintiff's Reply (Doc. #15). To the extent that additional facts are relevant, they will be summarized in the discussion section below.

## II.     **Standard of Review**

Judicial review of an ALJ's decision is limited to whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the correct legal standards.  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).  Substantial evidence is such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708,

722 (6th Cir. 2014) (citing *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)). It is "less than a preponderance but more than a scintilla." *Id.*

The second judicial inquiry—reviewing the correctness of the ALJ's legal analysis—may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Under this review, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## III. Discussion

As noted above, Plaintiff has filed both a Statement of Errors and a Motion to Remand. In her Statement of Errors, she raises several assignments of errors, including that the ALJ erred by (1) applying Acquiescence Rulings 98-3(6) and 98-4(6) to the prior 2018 ALJ denial decision; (2) formulating her mental residual functional capacity determination; (3) weighing the medical source opinions; (4) evaluating Plaintiff's subjective complaints; and (5) composing insufficient hypothetical questions to the vocational expert. (Doc. #8, *PageID* #s 994-1001).

Alternatively, in her Motion to Remand, she seeks a remand under Sentence Six of 42 U.S.C. § 405(g) due to evidence concerning treatment for her nervous impairments at University Psychiatry at University Hospital in Cincinnati from 2019 through 2021. (Doc. #9, *PageID* #s 1003-07). The undersigned will first address Plaintiff's Motion to Remand pursuant to Sentence Six before turning to her Statement of Errors.

### A. Sentence Six Remand

Sentence Six of 42 U.S.C. § 405(g) provides that "[t]he court… may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding[.]"  There is no dispute by either party that the evidence Plaintiff is trying to submit is "new" as required by this provision.  (Doc. #9, *PageID* #s 1004-06); (Doc. #14, *PageID* #s 1043-46).  The parties, do, however, dispute whether the evidence is "material" and whether there was "good cause" for Plaintiff not submitting the evidence during the proceeding before the ALJ.  *Id*.  As set forth below, the undersigned finds that Plaintiff has not shown good cause for the late submission.  As a result, there is no need to assess whether the evidence is material.

The Sixth Circuit "takes a hard[ ] line on the good cause test with respect to timing and thus requires the claimant to give a valid reason for [her] failure to obtain evidence prior to the hearing." *Courter v. Comm'r of Soc. Sec.*, 479 F. App'x. 713, 725 (6th Cir. 2012).  Indeed, the Sixth Circuit has recognized that the "good cause" provision "was enacted, at least in part, to limit the discretion of federal judges to remand for reconsideration of new evidence." *Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 554 (6th Cir. 1984).  In order to demonstrate "good cause," the claimant is required to detail the obstacles that prevented him from entering the evidence in a timely manner. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).  "The mere fact that evidence was not in existence at the time of the ALJ's decision does not necessarily satisfy the 'good cause' requirement." *Courter*, 479 F. App'x. at 725.

In this case, Plaintiff has not demonstrated good cause for her failure to introduce the records from University of Cincinnati Psychiatry before the ALJ.  While the evidence was not available until after the hearing, ALJ Shaughnessy kept the record open for the twenty-one days thereafter, as requested by Plaintiff's counsel. (Doc. #7-2, *PageID* #75). Additionally, while Plaintiff's counsel requested an additional fourteen days to obtain the records, (Doc. #7-6, *PageID* #611), he does not claim, nor does the record reflect, an attempt to keep the record open any longer than mid-March 2022.  Indeed, Plaintiff could have made an additional request for ALJ Shaughnessy to keep open the record so that Plaintiff could obtain these records.  Instead, Plaintiff has opted to place the blame on the ALJ since she was aware of her intention to submit these records and did not offer to keep the record open for an even more extended period of time for the purpose of submitting these records.

Contrary to Plaintiff's assertions, the ALJ was not under any obligation to further develop the record by informing Plaintiff that she would hold the record open for longer than the agreed upon period.  *See Trandafir v. Comm'r of Soc. Sec.*, 58 F. App'x 113, 115 (6th Cir. 2003) ("Only under special circumstances, *i.e.*, when a claimant is without counsel, is not capable of presenting an effective case, and is unfamiliar with hearing procedures, does an ALJ have a special, heightened duty to develop the record.").  Notably, both Plaintiff and her counsel were also aware that they had not yet submitted these records and, yet, neither requested the ALJ provide yet another extension for these records.  Such circumstances do not demonstrate good cause.  *See Willis*, 727 F.2d at 554 ("[C]ounsel for Appellant did not seek to have the record remain open until such time as other evidence could be made a part of the record.  Nothing in the record indicates any good cause for the failure to elicit medical testimony from Dr. Giray, prior to the close of the

6

proceedings before the ALJ.").  Accordingly, the Court finds the requirements for a Sentence Six remand not satisfied here.

**B.      The ALJ's Fresh Look of the Evidence**

In her Statement of Errors, Plaintiff contends that ALJ Shaughnessy erred by applying Acquiescence Rulings ("ARs") 98-3(6) and 98-4(6) to a prior 2018 ALJ decision without reviewing medical records from that case.  (Doc. #8, *PageID* #s 994-96).  The Social Security Administration issued AR 98-4(6) following the Sixth Circuit's decision in *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997).  In *Drummond*, the Sixth Circuit held that the principles of *res judicata* apply to both disability applicants and the Commissioner in Social Security cases.  126 F.3d at 841.  Specifically, the *Drummond* Court found that, absent evidence of "changed circumstances" relating to an applicant's condition, "a subsequent ALJ is bound by the findings of a previous ALJ."  *Id*. at 842.  In response to *Drummond*, the Social Security Administration subsequently issued the aforementioned AR 98-4(6), which provides:

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding.

AR 98-4(6), 1998 WL 283902, at *3 (Soc. Sec. Admin. June 1, 1998).

Thereafter, the Sixth Circuit clarified the scope of *Drummond* in *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929 (6th Cir. 2018).  In *Earley*, the Sixth Circuit explained that *res judicata* only applies if an applicant files a subsequent application for the same period of disability that was

7

rejected in the prior decision.  893 F.3d at 933.  The Sixth Circuit pointed out that *Drummond* was never intended to extend *res judicata* to foreclose review of a new application for a new period of time, reasoning that "[a]ny earlier proceeding that found or rejected the onset of disability could rarely, if ever, have 'actually litigated and resolved' whether a person was disabled at some later date." *Id*.  Rather, in cases where disability is alleged for a distinct period of time, the application is entitled to a "fresh look." *Id*.  This, of course, is not to say that a subsequent ALJ cannot consider a prior ALJ's decision. After all, in the absence of new and additional evidence, the subsequent ALJ may treat the prior ALJ's findings as "legitimate, albeit not binding, consideration in reviewing a second application." *Id*.

Previously, Plaintiff filed an application for benefits, which was ultimately denied by ALJ Peter Jamison.  (Doc. #7-3, *PageID* #s 382-97).  Plaintiff's instant application for benefits, however, involves a subsequent period of time following her application before ALJ Jamison. Specifically, ALJ Jamison's decision addressed whether Plaintiff had been under a disability from April 30, 2013 through the date of his decision on February 22, 2018, while Plaintiff's instant application alleges ongoing disability from January 26, 2021 through the date of ALJ Shaughnessy's decision on May 13, 2022. (Doc. #7-2 *PageID* #s 39-49; Doc. #7-3, *PageID* #s 382-97). In other words, Plaintiff's present application involves an entirely distinct period of time—from January 26, 2021 through May 13, 2022—that was not considered by ALJ Jamison. Accordingly, under *Earley*, ALJ Shaughnessy was not constrained by ALJ Jamison's assessment in formulating Plaintiff's residual functional capacity for the period at issue.  *See Earley*, 893 F.3d at 931.

8

Notwithstanding the foregoing, in her decision, ALJ Shaughnessy cited to *Drummond* and AR 98-4(6) without providing the Sixth Circuit's further clarification from *Earley*. *See* Doc. #7-2, *PageID* #45.  For her part, Plaintiff appears to allege that ALJ Shaughnessy erred because she did not consider the prior evidence relied on by ALJ Jamison, despite citing to AR 98-4(6). *See* Doc. #8, *PageID* #s 994-96.  However, as noted above, ALJ Shaughnessy was considering an entirely distinct period of time as ALJ Jamison and, therefore, was only supposed to view ALJ Jamison's prior findings as "legitimate, albeit not binding, consideration in reviewing a second application." *Earley,* 893 F.3d at 933.  Thus, to the extent that Plaintiff is arguing that ALJ Shaughnessy erred because she did not independently review the evidence for the period of time preceding the current period under review, her argument is without merit.  However, to the extent that she is arguing that ALJ Shaughnessy erred by applying the wrong legal standard by believing she was bound by ALJ Jamison's prior decision and not performing the "fresh look" required by *Earley*, the undersigned will address that argument.

Upon review of the record and the arguments of the parties, the undersigned finds that ALJ Shaughnessy did provide the necessary fresh look.  Evidence of ALJ Shaughnessy's fresh look can be found throughout her opinion.  For example, at step two of the disability analysis, ALJ Shaughnessy determined that Plaintiff had numerous severe impairments, including obesity, obstructive sleep apnea, major depressive disorder, and generalized anxiety disorder.  (Doc. #7-2, *PageID* #s 41-42).  In contrast, in the prior decision, ALJ Jamison found somewhat different severe impairments, including affective disorder (depression), anxiety disorder, obsessive compulsive disorder, post-traumatic stress disorder, and respiratory system disorder.  (Doc. #7-3, *PageID* #s 384-85).  Adding a severe impairment that was not included in the prior ALJ's decision is a strong

indicator that the current ALJ conducted a fresh look at the evidence. *See Sadler v. Comm'r of Soc. Sec.*, No. 18-11689, 2019 WL 4892419, at *6 (E.D. Mich. Aug. 16, 2019), *report and recommendation adopted sub nom. Sadler v. Saul*, No. 18-11689, 2019 WL 4627035 (E.D. Mich. Sept. 24, 2019) (finding that the ALJ gave the evidence a fresh look where the ALJ added two severe impairments not included in the earlier ALJ's decision).

ALJ Shaughnessy's fresh look is also present at step three of the disability analysis. Previously, ALJ Jamison had only assessed whether Plaintiff's sleep apnea met Listing 3.09 and mental impairments met Listings 12.04, 12.06, and 12.15. (Doc. #7-3, *PageID* #s 385-86). Conversely, under the current application, ALJ Shaughnessy also assessed Plaintiff's obesity under Social Security Ruling ("SSR") 19-2p, in addition to her sleep apnea under Listing 3.09 and mental impairments under Listings 12.04 and 12.06.  (Doc. #7-2, *PageID* #s 42-43).   While ALJ Shaughnessy ultimately found that none of Plaintiff's impairments singly or in combination met or medically equaled a listing, her assessment of Plaintiff's obesity, which was a change in her health and not previously considered by ALJ Jamison, supports a finding that she provided a fresh review of the evidence.

Further evidence that ALJ Shaughnessy provided an independent review of the evidence is demonstrated by the new evidence contained in the record that did not exist at the time of ALJ Jamison's decision.  Of note, ALJ Shaughnessy ordered and considered a new consultative exam, which was performed by Jinhui Wang, Psy.D., on May 28, 2021. (Doc. #7-7, *PageID* #s 913-19). Significantly, ALJ Shaughnessy found Dr. Wang's opinion to be persuasive in her assessment of Plaintiff's mental residual functional capacity.  (Doc. #7-2, *PageID* #47).  ALJ Shaughnessy also thoroughly considered new medical records from Plaintiff's treating providers, which also only

involved the period currently under review and did not exist at the time of ALJ Jamison's decision. *See* Doc. #7-2, *PageID* #s 45-46, 50 (citing records from February 2021 forward).

Finally, further evidence of ALJ Shaughnessy's fresh look is the fact that she crafted a different residual functional capacity than ALJ Jamison. Indeed, ALJ Shaughnessy formulated a residual functional capacity which reduced Plaintiff to performing only light work as opposed to ALJ Jamison's finding that she was capable of medium level work. *Compare* Doc. #7-2, *PageID* #s 44-47 *with* Doc. #7-3, *PageID* #s 102-07. Based on these changes, the Court is satisfied that ALJ Shaughnessy provided an independent review of the evidence prior to formulating Plaintiff's residual functional capacity. *See Dennis D.*, 2023 WL 2943822, at *5 (holding that the current ALJ provided a fresh look under *Earley* based, in part, on the fact that he formulated a different RFC than the prior ALJ).

In short, ALJ Shaughnessy provided the fresh look under *Earley* to which Plaintiff was entitled. Accordingly, ALJ Shaughnessy applied the correct legal standard, and Plaintiff's assignment of error is without merit.

### C.    Medical Source Opinions

Plaintiff argues that the ALJ erred in finding the opinions of the state agency psychologists and consultative examiner to be persuasive and in finding the opinion of her treating physician to be not persuasive.

Since Plaintiff filed her application after March 27, 2017, it is governed by the relatively new regulations describing how evidence is categorized, considered, and articulated when a residual functional capacity ("RFC") is assessed. *See* 20 C.F.R. §§ 416.913(a), 416.920c (2017). The governing regulations describe five different categories of evidence: (1) objective medical

evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. § 416.913(a)(1)-(5). Regarding two of these categories—medical opinions and prior administrative findings—an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [Plaintiff]'s medical sources." 20 C.F.R. § 416.920c(a). Instead, an ALJ must use the following factors when considering medical opinions or administrative findings: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with [Plaintiff]"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability programs policies and evidentiary requirements." § 416.920c(c)(1)-(5).

Supportability and consistency are the most important of the five factors, and the ALJ must explain how they were considered. 20 C.F.R. § 416.920c(b)(2). When evaluating supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support the medical opinion, the more persuasive the ALJ should find the medical opinion. § 416.920c(c)(1). When evaluating consistency, the more consistent a medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the ALJ should find the medical opinion. § 416.920c(c)(2). An ALJ may discuss how he or she evaluated the other factors but is generally not required to do so. § 416.920c(b)(2).

While these new regulations are more relaxed than the former rules governing the evaluation of medical opinions, "they still require that the ALJ provide a coherent explanation of [her] reasoning." *Lester v. Saul*, No. 5:20-CV-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted sub nom. Lester v. Comm'r of Soc. Sec.*, No.

5:20CV1364, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021). At bottom, the new regulations "set forth a 'minimum level of articulation' to be provided in determinations and decisions, in order to 'provide sufficient rationale for a reviewing adjudicator or court.'" *Warren I. v. Comm'r of Soc. Sec.*, No. 5:20-CV-495 (ATB), 2021 WL 860506, at *8 (N.D.N.Y. Mar. 8, 2021) (quoting 82 Fed. Reg. 5844-01, 5858 (January 18, 2017)). An "ALJ's failure to meet these minimum levels of articulation frustrates [the] court's ability to determine whether [the plaintiff's] disability determination was supported by substantial evidence." *Id.*

*State Agency Psychologists*

Cindy Mayti, Ph.D., reviewed Plaintiff's mental health records in June 2021. (Doc. #7-3, *PageID* #s 405-12). Dr. Mayti opined that Plaintiff had a mild limitation in her ability to understand, remember, or apply information and to concentrate, persist, or maintain pace. *Id.* at 408. She had a moderate limitation in her ability to interact with others and to adapt or manage oneself. *Id.* Dr. Mayti adopted the prior ALJ's mental RFC from February 22, 2018. *Id.* at 410-11. Specifically, she found that Plaintiff can occasionally interact with coworkers and supervisors but should have no interactions with the general public. *Id.* 410. Additionally, she could tolerate no more than ordinary routine changes in work settings and duties. *Id.*

In October 2021, upon reconsideration, Janet Souder, Psy.D., reviewed Plaintiff's records and affirmed Dr. Mayti's mental RFC assessment. *Id.* at 414-21. However, Dr. Souder found that Plaintiff had a moderate limitation in her ability to concentrate, persist, or maintain pace. *Id.* at 416.

The ALJ found Dr. Mayti's and Dr. Souder's opinions to be "persuasive." (Doc. #7-2, *PageID* #47). The ALJ acknowledged that they did not examine or treat Plaintiff. *Id.*; *see* 20

13

C.F.R. § 416.920c(c)(3) (identifying a medical source's relationship with the claimant as a factor when considering prior administrative medical findings). Further, the ALJ accurately recognized that their opinions were based only on the record available at the time of the reconsideration determination, and they did not consider medical records provided after that time. (Doc. #7-2, PageID #47). Nonetheless, the ALJ found that "additional medical evidence received in the course of developing [Plaintiff's] case for review at the administrative hearing level confirms the opinion of the state psychological examiners is consistent and accurate." *Id.*; *see Spicer v. Comm'r of Soc. Sec.*, 651 F. App'x 491, 493-94 (6th Cir. 2016) ("[A]n ALJ may rely on the opinion of a consulting or examining physician who did not have the opportunity to review later-submitted medical records if there is 'some indication that the ALJ at least considered these facts' before assigning greater weight to an opinion that is not based on the full record.") (quoting *Blakley*, 581 F.3d at 409). The ALJ explained that Dr. Mayti's and Dr. Souder's opinions were consistent with and supported by the record, including Plaintiff's participation in mental health therapy throughout the relevant period. (Doc. #7-2, *PageID* #47) (citations omitted); *see* 20 C.F.R. § 416.920c(c)(2) ("The more consistent a … prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the … prior administrative medical finding(s) will be."); 20 C.F.R. § 416.920c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her … prior administrative medical finding(s), the more persuasive the … prior administrative medical finding(s) will be."). The ALJ had previously discussed Plaintiff's mental health therapy, noting that Plaintiff participated in mental health treatment at Solutions Community Counseling since prior to her protective filing date. (Doc. #7-2, *PageID* #46) (citing Doc. #7-7,

*PageID* #s 741-805). Plaintiff took several different medications but stopped taking them because of side effects or because it stopped working. *Id.* However, the ALJ concluded that Plaintiff's mental health treatment was routine and conservative in nature, with no psychiatric hospitalizations or history of suicidal or homicidal ideation or attempts. *Id.*

Plaintiff argues that the ALJ erred in finding the opinions of the state agency psychologists to be persuasive. (Doc. #8, *PageID* #997). However, Plaintiff does not explain how the ALJ erred. Instead, she points to evidence that she asserts supports more limitations that those opined by the state agency psychologists. For example, Plaintiff notes that she testified that she seldom takes a bath and washes her hands five to six times a day for five to ten minutes. *Id.* (citing Doc. #7-2, *PageID* #68-69). Further, Plaintiff argues that medical records support her testimony. *Id.* (citations omitted). For instance, in January 2020, her provider noted that Plaintiff's OCD symptoms are unchanged; she "continues to wear gloves at home and have [] excessive handwashing." (Doc. #7-7, *PageID* #752). One month later, in February 2020, Plaintiff reported to her therapist that she "struggles with her fear of germs and that has limited her social life." *Id.* at 744. In August 2020, Plaintiff reported that she was having more anxiety leaving her house. *Id.* at 791.

The ALJ's explanation for finding Dr. Mayti's and Dr. Souder's opinions persuasive is clearly articulated and supported by substantial evidence. The ALJ specifically discussed the two most important factors listed in 20 C.F.R. § 416.920c—supportability and consistency. While Plaintiff points to evidence that she asserts is not consistent with Dr. Mayti's and Dr. Souder's opinions, "[t]he existence of potentially conflicting evidence is immaterial so long as substantial evidence supports an ALJ's determination." *Preston v. Comm'r of Soc. Sec.*, No. 22-4026, 2023

WL 4080104, at *3 (6th Cir. June 20, 2023) (citing *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d

709, 714 (6th Cir. 2012)). Here, because substantial evidence supports the ALJ's evaluation of

Dr. Mayti's and Dr. Souder's opinions, Plaintiff's argument lacks merit.

*Consultative Examiner*

Plaintiff underwent a consultative psychological examination by Dr. Wang in May 2021.

(Doc. #7-7, *PageID* #s 913-19). When asked about her typical daily routine, Plaintiff reported that

she usually sleeps twelve to fourteen hours, gets up, takes her medication, eats something, and gets

on her computer for hours, and then goes back to bed. *Id.* at 916. Dr. Wang noted that Plaintiff

was cooperative and displayed average social skills during the evaluation, and she was dressed and

groomed appropriately. *Id.* She appeared sad and stressed. *Id.* Dr. Wang opined that Plaintiff's

"intellectual functioning suggested that she was expected to be able to understand, remember, and

carry out instructions in a work setting." *Id.* at 918. Plaintiff's concentration and persistence

appeared satisfactory, and she was able to remain on task and worked at an adequate pace during

the evaluation. *Id.* However, Dr. Wang noted that if Plaintiff's depressive and anxiety symptoms

worsen, they could negatively impact her ability to focus and to concentrate. *Id.* Additionally, Dr.

Wang found that Plaintiff's reported social interaction difficulties "could have a negative impact

on her ability to interact with others in a work setting." *Id.* Finally, Dr. Wang opined that

Plaintiff's mental health symptoms "could lower her frustration tolerance and put her at risk for

workplace pressure …." *Id.* at 919.

The ALJ found Dr. Wang's opinion to be "persuasive." (Doc. #7-2, *PageID* #47). She

concluded that Dr. Wang's opinion was "largely consistent with the objective evidence of the

record …." *Id.* Specifically, the ALJ noted that Dr. Wang's opinion that Plaintiff had few, if any,

limitations in her ability to understand, remember, and carry out instructions was supported by her own examination of Plaintiff. *Id.* Specifically, the ALJ noted that during Dr. Wang's examination, Plaintiff was able to track the conversation flow, she did not display issues with understanding or remembering questions, and her intellectual functioning appeared to be intact. *Id.* Further, the ALJ found that the objective record supported Dr. Wang's opinion that Plaintiff "had at least a subjective impression of limitation" in the three remaining functional categories. *Id.*

Plaintiff contends that although the ALJ found Dr. Wang's opinion to be persuasive, the ALJ failed to include Dr. Wang's opined work-related limitations related to Plaintiff's ability to focus and concentrate. (Doc. #8, *PageID* #998). However, Dr. Wang did not opine that Plaintiff had specific work-related limitations in her ability to focus and concentrate. Instead, she opined, "If her depressive and anxiety symptoms are *to worsen*, they could negatively impact this domain by interfering with her ability to focus and concentrate." (Doc. #7-7, *PageID* #918) (emphasis added). There is no indication that Plaintiff's depressive and anxiety symptoms have worsened since her evaluation with Dr. Wang or, if they have, what limitations resulted from their interference with Plaintiff's ability to focus and concentrate. Thus, the ALJ did not err in failing to include a limitation based on Dr. Wang's opinion.

*Treating Physician*

Plaintiff also asserts that the ALJ erred in weighing the opinion of James Curell, M.D., her treating physician. (Doc. #8, *PageID* #s 998-99). Dr. Curell completed a medical source statement in September 2021. (Doc. #7-7, *PageID* #s 935-37). In the statement, Dr. Curell indicated Plaintiff had moderate limitations in her ability to remember work like procedures and to understand, remember, and carry out very short and simple instructions. *Id.* at 935. He opined that Plaintiff

had marked limitations in all of the other functional categories, including, for example, her ability to accept instructions and respond appropriately to criticism from supervisors and to get along with co-workers or peers without (unduly) distracting them or exhibiting behavioral extremes. *Id.* at 935-36. Dr. Curell noted that Plaintiff "has a combination of severe anxiety and depression. She becomes self conscious, distracted, and unable to concentrate." *Id.* at 936. He indicated that Plaintiff's condition is chronic and has existed and persisted for at least seven years. *Id.*

The ALJ found that Dr. Curell's opinion was "not persuasive." (Doc. #7-2, *PageID* #47). She reasonably discounted Dr. Curell's opinion because his medical source statement was "a simple checkbox form." *Id.* An ALJ may properly discount a medical source's checkbox form of functional limitations when it does not cite clinical test results, observations, or other objective findings. *Ellars v. Comm'r of Soc. Sec.*, 647 F. App'x 563, 567 (6th Cir. 2016) (collecting cases). Dr. Curell's limited explanation does not cite clinical test results, observations, or other objective findings and, therefore, is not sufficient to explain his opinions. *See Rogers v. Comm'r of Soc. Sec.,* 225 F.3d 659 (Table), 2000 WL 799332, *6 (6th Cir. 2000) (treating physician's documentation of impairments on form with checked-off boxes was not entitled to great weight when no further explanation given). Furthermore, the ALJ reasonably discounted Dr. Curell's opinion because he did not explain the rationale for his extreme opinions. (Doc. #7-2, *PageID* #47); 20 C.F.R. § 416.920c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) …, the more persuasive the medical opinions … will be."). Finally, the ALJ discounted Dr.

18

Currell's opinion because it was not supported by the objective evidence of record.[3] (Doc. #7-2, *PageID* #47) (citations omitted); *see* 20 C.F.R. § 416.920c(c)(2). Substantial evidence supports the ALJ's reasons for finding Dr. Curell's opinion to be "not persuasive."

Ultimately, Plaintiff argues that the ALJ should have assigned more weight to Dr. Curell's opinion than to Dr. Mayti's, Dr. Souder's, and Dr. Wang's opinions. However, the Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Bradley v. Sec'y of Health and Human Serv.*, 862 F.2d 1224, 1228 (6th Cir. 1988); *Jordan v. Comm'r of Soc. Sec.,* 548 F.3d 417, 422 (6th Cir. 2008) (The Court "may not try the case *de novo*[;] nor resolve conflicts in evidence[;] nor decide questions of credibility.") (quoting *Garner v. Heckler,* 745 F.2d 383, 387 (6th Cir. 1984)). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion." *Buxton v. Halter,* 246 F.3d 762 772 (6th Cir. 2001). Rather, if the Commissioner's decision "is supported by substantial evidence, then we must affirm the [Commissioner's] decision[,] even though as triers of fact we might have arrived at a different result." *Elkins v. Sec'y of Health and Human Servs.,* 658 F.2d 437, 439 (6th Cir. 1981) (citing *Moore v. Califano,* 633 F.3d 727, 729 (6th Cir. 1980)). In this case, substantial evidence supports the ALJ's reasons for relying on Dr. Mayti's, Dr. Souder's, and Dr. Wang's opinions and discounting Dr. Curell's opinion. *See Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 785 (6th Cir. 2017), *aff'd sub nom. Biestek v. Berryhill*, 203 L. Ed. 2d 504, 139 S. Ct. 1148 (2019) ("The ALJ faced dueling opinions

---

[3] The ALJ also found that there was no evidence to support that Dr. Curell was Plaintiff's treating source. (Doc. #7-2, *PageID* #47). As explained above, the ALJ did not receive records from Dr. Curell and, thus, at the time of the ALJ's decision, there was no evidence that Dr. Curell treated Plaintiff. Regardless of whether Dr. Curell is Plaintiff's treating source, the ALJ provided other reasons to discount Dr. Curell's opinion.

from two highly qualified medical experts and found Dr. Barnes's testimony more credible after assessing how well his testimony fit with the objective medical record—a determination she was fully empowered to make.") (citing *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990) ("The [Commissioner], and not the court, is charged with the duty to weigh the evidence, to resolve material conflicts in the testimony, and to determine the case accordingly.")).

> **D.    Symptom Severity**

Plaintiff next contends that the ALJ erred in conducting the subjective symptom analysis. (Doc. #8, *PageID* #s 999-1001).  Specifically, Plaintiff asserts that the ALJ "erred as a matter of law in claiming that the mental impairments are not supported by objective evidence" because "[t]his ground, alone, is not permissible to dismiss the subjective complaint[s] under 20 CFR 416.929(c)(2)."  *Id.* at 999.  Further, she argues that the ALJ erred in assessing her efforts at treatment and her daily activities.  *Id.* at 1000.

When a plaintiff alleges symptoms of disabling severity, the ALJ must follow a two-step process for evaluating those symptoms.  *See* 20 C.F.R. § 416.929; SSR 16-3p, 2017 WL 5180304, *2-3 (October 25, 2017).[4]  First, the ALJ must determine whether the individual has a medically determinable physical or mental impairment that can reasonably be expected to produce the symptoms alleged; second, the ALJ must evaluate the intensity, persistence, and functional limitations of those symptoms by considering objective medical evidence and other evidence, including: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other

---

[4] SSR 16-3p, 2017 WL 5180304, which "provides guidance about how [the SSA] evaluate[s] statements regarding the intensity, persistence, and limiting effects of symptoms," superseded SSR 96-7p and became applicable to decisions issued on or after March 28, 2016.

symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment, other than medication, received for relief of pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms. *See* 20 C.F.R. § 416.929(c)(3).

In performing this assessment, the ALJ is not required to analyze every factor but must still show that he considered the relevant evidence. *Roach v. Comm'r Soc. Sec.*, No. 1:20-CV-01853-JDG, 2021 WL 4553128, at *10–11 (N.D. Ohio Oct. 5, 2021). Indeed, the ALJ's assessment of an individual's subjective complaints and limitations must be supported by substantial evidence and be based on a consideration of the entire record. *Rogers*, 486 F.3d at 247 (internal quotation omitted). In turn, this evidence should be "scrutinized" for consistency. *Id.* Finally, the ALJ's explanation of his decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* at 248.

In the present case, the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms but found her statements concerning the intensity, persistence and limiting effects of those symptoms are not entirely consistent with the medical evidence and other evidence of record and are not supported by the objective evidence of record. (Doc. #7-2, *PageID* #45). Substantial evidence supports the ALJ's conclusion.

With regard to Plaintiff's mental impairments, the ALJ recognized that Plaintiff testified that "she is unable to work because she is constantly anxious about leaving her home, fear of

contact with other people, along with depression." (Doc. #7-2, *PageID* #45). Further, Plaintiff stated that her depression caused memory and cognition problems. *Id.* Throughout the ALJ's decision, she identified evidence that is inconsistent with Plaintiff's statements. *See Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) (recognizing that the ALJ's decision should be read as a whole). For instance, the ALJ explained that although Plaintiff reported social anxiety and being afraid of speaking to people, the record shows that Plaintiff interacted well with her clinicians, who generally noted that Plaintiff pleasant and cooperative. *Id.* at 43 (citations omitted); *see* Doc. #7-7, *PageID* #916 (describing Plaintiff as "cooperative" during consultative examination); Doc. #7-7, *PageID* #952 (describing Plaintiff as "pleasant"). Similarly, despite Plaintiff's assertion that she has limitations related to her ability to concentrate, persist, and maintain pace, the ALJ observed that Plaintiff's concentration and persistence appeared satisfactory during her consultative examination with Dr. Wang. (Doc. #7-2, *PageID* #43); *see* Doc. #7-7, *PageID* #917. Further, the ALJ noted that Plaintiff did not display abnormal speech or thought process consistent with disabling distractibility and demonstrated an ability to maintain conversational exchanges with various examiners. *Id.* (citations omitted); *see* Doc. #7-7, *PageID* #s 964, 967, 970, 973, 976, 979, 982 (noting that Plaintiff "was able to maintain a conversation").

Moreover, although Plaintiff is correct that an ALJ may not "reject [an individual's] statements about the intensity and persistence of [her] pain ... solely because the available objective medical evidence does not substantiate [those] statements[,]" 20 C.F.R. § 416.929(c)(2), the ALJ did not rely solely on the lack of objective evidence to support Plaintiff's alleged symptoms. Specifically, the ALJ considered Plaintiff's treatment, concluding that she "has not generally received the type of medical treatment one would expect for a totally disabled individual." (Doc.

22

#7-2, *PageID* #45); *see* 20 C.F.R. § 416.929(c)(3)(v) (identifying treatment as a factor relevant to consideration of a claimant's symptoms). The ALJ recognized that although Plaintiff has undergone treatment, "that treatment has been essentially routine and conservative in nature, with no psychiatric hospitalizations, and no history of suicidal or homicidal ideation or attempts." (Doc. #7-2, *PageID* #45) (citations omitted). *See Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 727 (6th Cir. 2013) (holding that the fact of conservative treatments supported the ALJ's RFC determination). The ALJ discussed Plaintiff's mental health treatment, noting that she participated in therapy and was prescribed medication. *Id.* (citation omitted); *see* 20 C.F.R. § 416.929(c)(3)(v) (listing the type, dosage, effectiveness, and side effects of any medication a claimant takes or has taken to alleviate her pain or other symptoms as a factor relevant to consideration of a claimant's symptoms). He noted specifically that Plaintiff stopped taking Lithium and Wellbutrin due to side effects and that Plaintiff reported that Lexapro stopped working. (Doc. #7-2, *PageID* #45) (citations omitted).

Further, contrary to Plaintiff's claim, the ALJ also discussed Plaintiff's daily activities in her decision. (Doc. #7-2, *PageID* #46); *see* 20 C.F.R. § 416.929(c)(3)(i). Specifically, the ALJ noted that Plaintiff reported to Dr. Wang that her daily activities include waking up, eating, getting on the computer, and going back to bed. (Doc. #7-2, *PageID* #46). Plaintiff indicated that she sleeps between twelve and fourteen hours every night. *Id.* The ALJ also recognized that Plaintiff testified she drives once a week to get groceries. *Id.* at 45.

In sum, the ALJ applied the proper legal standards, and substantial evidence supports the ALJ's conclusion that Plaintiff's statements concerning the intensity, persistence and limiting

effects of those symptoms were not entirely consistent with the medical evidence and other evidence of record. Accordingly, Plaintiff's argument lacks merit.

### E. Evaluation of Mental RFC

Plaintiff asserts that the ALJ erred in assessing her mental RFC. (Doc. #8, *PageID* #996). The undersigned understands Plaintiff's argument to be that the ALJ's mental RFC does not adequately account for her moderate limitations in interacting with others, in caring for oneself, and in concentration, persistence, and pace. *See id.* Specifically, Plaintiff argues that the ALJ's limitation to occasional contact with supervisors and co-workers does not allow her control over when that contact occurs. *Id.* Further, Plaintiff contends that she will be off task more than fifteen percent of the workday, and the ALJ's mental RFC does not account for this. *Id.* Plaintiff appears to argue that she will be off task more than fifteen percent of the workday because she washes her hands five to six times a day for five to ten minutes at a time "[d]ue to her OCD." *Id.* at 997 (citation omitted).

A plaintiff's RFC is an assessment of "the most [a plaintiff] can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1) (2012). The Social Security regulations, rulings, and Sixth Circuit precedent provide that the ALJ is charged with the final responsibility in determining a claimant's RFC. *See, e.g.*, 20 C.F.R. § 416.946(c) (if the claimant's case is at the ALJ hearing level, the ALJ is responsible for assessing his RFC); *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010) ("The Social Security Act instructs that the ALJ—not a physician—ultimately determines a claimant's RFC."). The ALJ's RFC assessment must be based on all the relevant evidence in the case record. 20 C.F.R. § 416.945(a). If substantial evidence supports the ALJ's RFC assessment, "the Court defers to that determination even in the face of

24

substantial evidence supporting the opposite conclusion." *Vickers v. Comm'r of Soc. Sec.*, No. 20-1935, 2021 WL 4468414, at *4-5 (6th Cir. July 12, 2021) (citing *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405-06 (6th Cir. 2009)).

In her mental RFC, the ALJ limited Plaintiff to occasional interaction with supervisors and coworkers; no interaction with the general public; and routine changes in a work setting. (Doc. #7-2, *PageID* #44). The undersigned concludes for the reasons set forth below that the ALJ's mental RFC is supported by substantial evidence.

As Plaintiff correctly notes, at Step Three of the sequential evaluation process, when assessing the "paragraph B" criteria, the ALJ found Plaintiff had moderate functioning limitations in the following three functional areas: interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (Doc. #7-2, *PageID* #43). The ALJ also found that Plaintiff had a mild limitation in understanding, remembering, or applying information. *Id.* at 42-43. However, an "ALJ does not necessarily err by finding moderate limitations at step three but excluding those limitations in a 'residual functional capacity' analysis at steps four and five." *Wood v. Comm'r of Soc. Sec.*, No. 19-1560, 2020 WL 618536, at *3 (6th Cir. 2020). This is because "the limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." SSR 96-8P, 1996 WL 374184, at *4 (S.S.A. July 2, 1996).

Here, the ALJ accounted for Plaintiff's moderate limitation in adapting or managing oneself by limiting her to routine changes in a work setting. (Doc. #7-2, *PageID* #44). Plaintiff does not appear to contend that the ALJ erred in reaching this conclusion.

Furthermore, the ALJ accounted for Plaintiff's moderate limitation in interacting with others by limiting her to occasional interaction with supervisors and coworkers and no interaction with the general public.  (Doc. #7-2, *PageID* #44).  Although Plaintiff is correct that the ALJ's mental RFC does not allow Plaintiff to control when such contact with supervisors or coworkers occurs, no medical source opined that Plaintiff needed such control.  *See Watters v. Comm'r of Soc. Sec.*, 530 F. App'x 419, 424-25 (6th Cir. 2013) ("[T]his court has consistently affirmed that the claimant bears the burden of producing sufficient evidence to show the existence of a disability.") (citing *Harley v. Comm'r of Soc. Sec.*, 485 F. App'x 802, 803 (6th Cir. 2012) (other citation omitted)).  Indeed, while Plaintiff points to Dr. Curell's opinion in support of her argument, Dr. Curell did not opine that Plaintiff needed control over when contact occurred with her supervisors and coworkers.  Instead, he indicated that Plaintiff had "marked loss" in her ability to accept instructions and respond appropriately to criticism from supervisors and to get along with co-workers or peers without (unduly) distracting them or exhibiting behavioral extremes.  (Doc. #7-7, *PageID* #936).  To the extent that Dr. Curell's opinion supports Plaintiff's argument, the ALJ properly considered Dr. Curell's opinion and found it "not persuasive."  (Doc. #7-2, *PageID* #47).  Thus, the ALJ was not obligated to account for his opined limitations.

Similarly, no medical source opined that Plaintiff would be off task more than fifteen percent of the workday.  In contrast, the opinions of the record reviewing psychologists and consultative examiner, as discussed above, support the ALJ's mental RFC assessment.  Moreover, Plaintiff's testimony does not establish that she would be off task more than fifteen percent of the workday because, even if she washes her hands five to six times per day for five to ten minutes at a time, there is no evidence that she would wash her hands five to six times while at work.  Further,

the vocational expert testified that during a typical workday, a person is usually given a fifteen-minute break in the morning and afternoon and a thirty to forty-five minute break for lunch. (Doc. #7-2, *PageID* #73). Thus, Plaintiff would have three opportunities to wash her hands during the workday. Plaintiff has not shown that she would require additional time to wash her hands throughout the workday.

To the extent that Plaintiff asserts that the ALJ otherwise erred in finding moderate limitations in concentrating, persisting, or maintaining pace, Plaintiff's argument lacks merit. Although Plaintiff testified to memory and cognition problems, the ALJ explained that the evidence does not show significant difficulty with concentrating, persisting, and maintaining pace:

> The record fails to show an inability to complete testing that assesses concentration and attention. There is no evidence of prescribed medication needed to improve concentration. The claimant displayed no abnormal speech or thought processes consistent with disabling distractibility. She also demonstrated an ability to maintain conversational exchanges with various examiners (B8F; B10F; B12F; B13F). During Dr. Wang's psychological consultative examination of the claimant in May 2021, an impairment in attention and concentration was not observed (B8F/7). She also did not report any concentration issues at work, but she indicated she did work slower than she should have (Id.). According to Dr. Wang, her concentration and persistence appeared satisfactory, and she was able to remain on task and worked at an adequate pace for all clinical interactions during the evaluation (Id.).

(Doc. #7-2, *PageID* #43). Indeed, the ALJ ultimately concluded that Plaintiff "has, *at most*, a moderate limitation in concentrating, persisting or maintaining pace." *Id.* (emphasis added). The ALJ's mental RFC is consistent with Dr. Souder's opinion who also found that Plaintiff had a moderate limitation in her ability to concentrate, persist, or maintain pace. (Doc. #7-2, *PageID* #416).

Moreover, Plaintiff has failed to identify any evidence establishing that the ALJ omitted a specific functional limitation related to her ability to concentrate, persist, and maintain pace from her mental RFC assessment. *See Kirkland v. Kijakazi*, No. 3:22-CV-60-DCP, 2023 WL 3205330, at *15 (E.D. Tenn. May 2, 2023) (affirming denial of benefits where plaintiff failed to "point to any evidence in the record" showing specific functional limitation not included in the RFC). Thus, to the extent that Plaintiff is arguing that the ALJ did not account for her moderate limitation in concentration, persistence, or pace, Plaintiff's argument lacks merit.

In short, the ALJ appropriately considered all of the evidence of record and rendered a mental RFC assessment which was supported by substantial evidence, including Plaintiff's complaints, medical records, and medical opinions. *See* 20 C.F.R. § 416.945(a)(2); *see Wood v. Comm'r of Soc. Sec.*, No. 19-1560, 2020 WL 618536, at *4 (6th Cir. Jan. 31, 2020). Although Plaintiff cites other record evidence that may have supported a more limited RFC, "[a]s long as substantial evidence supports the Commissioner's decision, we must defer to it, even if there is substantial evidence in the record that would have supported an opposite conclusion." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004); *see Jordan v. Comm'r of Soc. Sec.,* 548 F.3d 417, 422 (6th Cir. 2008) (The Court "'may not try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility.'") (quoting *Garner v. Heckler,* 745 F.2d 383, 387 (6th Cir. 1984)).

## F.    Vocational Expert

Finally, in her last statement of error, Plaintiff argues that the ALJ "did not carry her step 5 burden with improper hypothetical questions to the vocational expert." (Doc. #8, *PageID* #1001). Specifically, she contends that the ALJ erred in failing to include Plaintiff's "moderate

limitations on dealing with others, in caring for oneself, and in concentration, persistence, or pace" and Dr. Curell's opined work-related limitations. *Id.*

In fashioning a hypothetical RFC to be posed to a vocational expert, the ALJ is required to incorporate only those limitations that she accepts as credible. *Casey v. Sec'y of H.H.S.*, 987 F.2d 1230, 1235 (6th Cir. 1993). *see also Justice v. Comm'r of Soc. Sec.*, 515 F. App'x 583, 588 (6th Cir. 2013) ("[T]he ALJ is only required to incorporate, as part of that examination [of the VE], evidence that is deemed credible."). Here, the ALJ selected hypothetical questions which accurately described Plaintiff's limitations and the extent of her ability to perform work as supported by the evidence. As previously discussed, substantial evidence supports the ALJ's assessment of Plaintiff's mental RFC. Thus, the ALJ was not required to include the additional limitations in her hypothetical question that were not supported. For these reasons, Plaintiff's statement of error is not well taken.

## IT IS THEREFORE ORDERED THAT:

1. Plaintiff's Statement of Errors (Doc. #8) is **DENIED**;

2. The Commissioner's non-disability determination is **AFFIRMED**;

3. Plaintiff's Motion for Remand (Doc. #11) is **DENIED**; and

4. The case is terminated on the docket of this Court.

March 25, 2024                                              *s/Peter B. Silvain, Jr.*
                                                            Peter B. Silvain, Jr.
                                                            United States Magistrate Judge